[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
In this case, the plaintiff, Randy K. Wilson ("Wilson"), claimed he sustained personal injuries when he slipped and fell on an icy walkway after exiting his vehicle on the morning of November 14, 1997 when he was going to work at H Maimen Company ("Maimen"). The property where the injury occurred was owned by the defendant, Kent Realty, L.L.C. ("Kent Realty"). The matter was tried to a jury on February 15, 16, 17 and 18, 2002. The jury returned a general verdict for the plaintiff awarding him CT Page 8203-am $388,680 in economic damages and $255,500 in non-economic damages. The jury also found the percent of negligence attributable to the plaintiff to be twenty-nine (29) percent and the percent of negligence attributable to the defendant to be seventy-one (71) percent. The total damages, after the application of the comparative negligence, therefore, were $457,367.80. On March 7, 2002, Kent Realty filed a motion to set aside the verdict and for a new trial, a motion for remittitur and a motion for judgment notwithstanding the verdict. See Practice Book §§ 16-35, 16-37 and General Statutes §§ 52-216a and 52-228. The court heard oral argument on these motions on April 8, 2002. This memorandum will address the above motions, as well as, the plaintiffs motion for prejudgment interest and costs which was filed March 13, 2002. See General Statutes § 52-192a.
In its motion to set aside the verdict and for new trial, Kent Realty claims that the verdict is contrary to the law in that the court 1) failed to charge the jury that the defendant had no duty to warn against open and obvious conditions; 2) failed to charge the jury that the defendant had no duty during an ongoing storm to use abrasive materials such as sand or salt; 3) improperly charged the jury regarding unusual circumstances; 4) incorrectly charged on the inconsequential negligence of the plaintiff The defendant further argues that the verdict was against the evidence in that a) the plaintiff offered no evidence to establish how long the alleged defect existed; b) that the undisputedevidence (emphasis added) was that the fall occurred during an ongoing storm and therefore the defendant had no duty as a mailer of law. The motion to set aside and for new trial further states that the court failed to charge the jury in accordance with several of the defendant's request to charge and also argues that the court erred in the admission and/or exclusion of certain evidence. The motion further states that the court erroneously denied the defendant's motion for a mistrial after the plaintiff in direct testimony stated that he had been referred for a second opinion by an insurance company. In its motion for remittitur, Kent Realty claims that the jury's award of damages was excessive. In its motion for judgment notwithstanding the verdict, the defendant submits that judgment should be entered for the defendant because the judgment is against the evidence in that 1) the plaintiff offered no evidence to establish how long the alleged defect existed; and 2) the undisputedevidence (emphasis added) was that the fall occurred during an ongoing storm.
In considering these motions, the court is required to view the evidence in the light most favorable to sustaining the jury's verdict.Purzycki v. Fairfield, 244 Conn. 101, 113, 708 A.2d 934 (1998) (motion to set aside verdict); Berry v. Loiseau, 223 Conn. 786, 810, 614 A.2d 414
(motion for remittitur). In evaluating the sufficiency of the evidence, CT Page 8203-an the court should not act as a "seventh juror." Purzycki v. Fairfield, supra, 244 Conn. 112-13. Rather, the court must determine "whether the totality of the evidence, including reasonable inferences therefrom, supports the jury's verdict." (Internal quotation marks omitted.) Ormsbyv. Frankel, 54 Conn. App. 98, 110, 734 A.2d 575 (1999). of course, "the plaintiff must produce sufficient evidence to remove the jury's function of examining inferences and finding facts from the realm of speculation."Paige v. Saint Andrew's Roman Catholic Church Corp., 250 Conn. 14, 18,734 A.2d 85 (en banc 1999), rev'g. Paige v. Saint Andrew's Roman CatholicChurch Corp., 247 Conn. 24, 718 A.2d 425 (1998). However, a trial court "should not set aside a verdict where it is apparent that there was some evidence upon which the jury might reasonably reach their conclusion. . . ." Salaman v. City of Waterbury,246 Conn. 298, 304, 717 A.2d 161 (1998), quoting,A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200,206, 579 A.2d 69 (1990). "Moreover, [i]n reviewing the jury verdict, it is well to remember that [illurors are not expected to lay aside mailers of common knowledge or their own observation and experience of the affairs of life, but, on the contrary, to apply them to the evidence or facts in hand, to the end that their action may be intelligent and their conclusions correct." (Internal quotation marks omitted.) Purzycki v.Fairfield, supra, 244 Conn. 113. Practice Book § 16-18 allows the judicial authority, upon request of either party to submit interrogatories to the jury for the purpose of explaining or limiting a general verdict.
"Where there is a general verdict and no breakdown of the components of the verdict, it would be error to set it aside." Marchetti v. Ramirez,40 Conn. App. 740, 746, 673 A.2d 567 (1996), aff'd, 240 Conn. 49,688 A.2d 1325 (1997). The rendering of a general verdict "coupled with the absence of interrogatories, [makes] it impossible for the trial court . . . to determine what factors the jury considered in making its award." Id. "Where there is a general verdict and no interrogatories to the jury regarding the breakdown of the verdict, it is impossible for the trial court . . . to determine what factors the jury considered in making its award." (Internal quotation marks omitted.) Caruso v. Quickie Cab Co.,48 Conn. App. 459, 460-61, 709 A.2d 1154 (1998). "We cannot speculate as to how the jury reached its figure." Id. "[the jury was] at liberty to accept what part of [the evidence it] chose and factor [that evidence] into [its] total calculations." Pisel v. Stamford Hospital, 180 Conn. 314,344, 430 A.2d 1 (1980).
The general verdict rule provides that, where a jury returns a general verdict in favor of a party, and no party submits special interrogatories, an appellate court presumes that the jury found in favor of the prevailing party on every issue. Curry v. Burns, 225 Conn. 782, CT Page 8203-ao 786, 626 A.2d 719 (1993).
In Curry, our Supreme Court limited the application of the general verdict rule to five categories: "(1) denial of separate counts of a complaint; (2) denial of separate defenses pleaded as such; (3) denial of separate legal theories of recovery or defense pleaded in one count or defense, as the case may be; (4) denial of a complaint and pleading of a special defense; and (5) denial of a specific defense, raised under a general denial, that had been arrested as the case was tried but that should have been specially pleaded." Curry v. Burns, supra, 225 Conn. 801.
The case falls squarely within the fourth category, "denial of a complaint and pleading of a special defense." In its answer, the defendant denied the allegations of negligence set forth in the complaint and raised a special defense of contributory negligence. Parties who want to preclude application of the general verdict rule may seek a special verdict on each count or "elicit specific grounds for the verdict by submitting interrogatories to the jury." Curry v. Burns, supra,225 Conn. 786; Pedersen v. Vahidy, 209 Conn. 510, 514, 552 A.2d 419
(1989).
The defendant argues that the general verdict rule does not apply in this case. The pleadings in this case show that the defendant, in its answer, denied certain allegations of the complaint and pled special defenses. (Answer and Special Defense, December 18, 2000.) The jury in this case rendered a general verdict for economic and non-economic damage with no interrogatories submitted by either of the parties.
MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT
[A] motion [for judgment notwithstanding the verdict] should be granted if the evidence establishes, as a mailer of law, that the party who had obtained the verdict could not and was not entitled to prevail. Gesualdiv. Connecticut Co., 131 Conn. 622, 627, 41 A.2d 771 (1945); Yeske v. AvonOld Farms School, Inc., 1 Conn. App. 195, 206 470 A.2d 705 (1984). When considering the motion, the evidence must be given the most favorable construction in support of the verdict as is reasonably possible.Aksomitas v. Aksomitas, 205 Conn. 93, 100 [529 A.2d 1314 (1987)]. When a verdict is challenged because of a lack of sufficient evidence, the issue raised is whether the trier of fact could reasonably have concluded, upon facts established and inferences permissibly drawn from them, that the cumulative effect of the evidence warranted the ultimate finding made.Coelho v. Posi-Seal International, Inc., 208 Conn. 106, 112 544 A.2d 170
(1988); Jonap v. Silver, 1 Conn. App. 550, 559 474 A.2d 800 (1984)." "While it is the jury's right to draw logical deductions and make reasonable inferences from the facts proven . . . it may not resort to CT Page 8203-ap mere conjecture and speculation. . . . If the evidence would not reasonably support a finding of the particular issue, the trial court has a duty not to submit it to the jury." (Internal quotation marks omitted.)Sandella v. Dick Corp., 53 Conn. App. 213, 218-19, 729 A.2d 813, cert. denied, 249 Conn. 926, 733 A.2d 849 (1999).
The defendant argues that there was no evidence to establish how long the alleged defect existed.
"Pursuant to Practice Book § 321 [now § 16-37] a party whose motion for a directed verdict has been denied may move to have the jury's verdict set aside and to have judgment rendered in accordance with his motion for a directed verdict." Berry v. Loiseau, 223 Conn. 786, 819,614 A.2d 414 (1992). "A motion for judgment notwithstanding the verdictmay not be granted on any ground not previously raised by a motion for adirected verdict." (Emphasis added.) Salaman v. Waterbury,44 Conn. App. 211, 215 687 A.2d 1318 (1997). Practice Book § 321 [now § 16-37] provides in relevant part: "Whenever a motion for directed verdict . . . is denied . . . the court is deemed to have submitted the action to the jury subject to a later determination of the legal questions raised by the motion. . . . After the acceptance of a verdict . . . a party who has moved for a directed verdict may move to have the verdict and any judgment rendered thereon set aside and have judgment rendered in accordance with his motion for a directed verdict. . . ." Id., 215-16. (Emphasis added.) "The specific grounds stated in a motion for directed verdict must be renewed in a motion for judgment notwithstanding the verdict. The motion for judgment notwithstanding the verdict is not a new motion, but the renewal of a motion for a directed verdict." Id., 216, citing, 2 E. Stephenson, Connecticut Civil Procedure (2d Ed. 1970) § 203, p. 823.
"The purpose of this rule of specificity is to prohibit reconsideration of the factual basis of a jury's verdict unless that verdict is accepted subject to the trial court's reserved ruling on a particular claim of legal sufficiency. This reserved ruling on a specific claim satisfies the constitutional prohibition that would otherwise preclude judicial reexamination of factual mailers decided by the jury. Further, as a practical mailer, the rule serves to ensure that a party against whom a motion for a directed verdict is directed and the trial court have sufficient notice of the alleged deficiency of proof so as possibly to cure it without necessitating a new trial." Id.
The defendant concedes that it did not raise the issue of the length of time the alleged defect existed in its motion for a directed verdict, therefore, the court will not consider that issue. CT Page 8203-aq
The defendant argues in its motion for judgment notwithstanding the verdict (page 3 at ¶ 2) and in its motion to set aside verdict and for new trial (page 6 at ¶ 5) that the undisputed evidence (emphasis added) was that the fall occurred during an ongoing storm and, therefore, the defendant owed no duty to the plaintiff citing Kraus v.Newton, 211 Conn. 191, 193-194, 558 A.2d 240 (1989).
The jury was presented evidence from Doug Sitter that "It had basically stopped storming. It was clearing. The sky was clearing", as he was walking into work. Furthermore the plaintiff testified that there was "mist" or "heavy fog" when the plaintiff left for work. The plaintiff also testified that the roads were "wet" on his way to work. The issue of whether there was an ongoing storm was not "undisputed."
"The Supreme Court's decision in Kraus "does not foreclose submission to the jury, on a proper evidentiary foundation, of the factual determinations of whether a storm has ended . . . Cook v. O'BrienProperties, Inc., 48 Conn. App. 339, 344, 710 A.2d 788 (1988). The trial court properly placed on the jury the responsibility of determining whether the storm had in fact ended at the time of the plaintiffs fall." Id.
It is undisputed that Wilson was a business invitee of Kent Realty. "An occupier of land is chargeable with constructive notice of defects when dealing with invitees." Kurti v. Becker, 54 Conn. App. 335, 338,733 A.2d 916 (1999). "The determinative question is whether the defective condition existed for such a length of time that the defendant, in the exercise of reasonable care, should have discovered it and remedied it. . . . It is settled that circumstantial evidence can establish constructive notice." Id., 339. (Internal quotation marks omitted) Even an absent landowner may be held responsible under a constructive notice theory, if a reasonable inspection of property would have led to the discovery of the specific defective condition in sufficient time to remedy it or warn of the danger. Warren v. Stancliff, 157 Conn. 216,219, 251 A.2d 74 (1968) (possessor of land in Florida when plaintiff slipped on icy driveway). "Constructive notice is premised on the policy determination that under certain circumstances a person should be treated as if he had actual knowledge so that one should not be permitted to deny knowledge when he is acting so as to keep himself ignorant. . . . Therefore, when a possessor of land fails to make or to have made a reasonable inspection which would have disclosed the dangerous condition, his negligent ignorance is, in the eyes of the law, equivalent to actual knowledge. . . ." (Citations omitted.) Id.
The jury was required to determine whether the icy sidewalk where Wilson slipped and fell had existed for a sufficient period of time for CT Page 8203-ar Kent Realty to have had constructive notice of it. "What constitutes a reasonable length of time within which the defendant should have learned of the defect, how that knowledge should have been acquired, and the time within which, thereafter, the defect should have been remedied are mailers to be determined in the light of the particular circumstances of each case. The nature of the business and the location of the defective condition would be factors in this determination. To a considerable degree, each case must be decided on its own circumstances." (Citations omitted; internal quotation marks omitted). Sauro v. Arena Co.,171 Conn. 168, 171, 368 A.2d 58 (1976). Measuring the totality of the evidence and the reasonable inferences that could be drawn from it against these factors, the jury could have reasonably concluded that Kent Realty had constructive notice of the icy sidewalk.
This evidence was sufficient for the jury to draw an inference that the icy sidewalk had existed for a sufficient period of time prior to Wilson's fall for Kent Realty to have discovered the defect upon conducting a reasonable inspection.
Having some evidence before it that the icy sidewalk had existed for a sufficient period of time, the jury was then entitled to consider all the circumstances of the case, the location of the defective condition, in determining how much time constituted a reasonable length of time for the defendant to have learned of the defect. Sauro v. Arena Co., supra,171 Conn. 171, citing, Morris v. King Cole Stores, Inc., 132 Conn. 489,492, 45 A.2d 710 (1946). There was sufficient evidence to allow the jury to draw the conclusion that Kent Realty had a reasonable amount of time.
Furthermore, the jury could consider that the Maimen property layout required employees such as Wilson to use a certain entrance as a factor in assessing the reasonableness of the length of time. cf., Cooks v.O'Brien Properties, Inc., supra, 48 Conn. App. (Evidence of availability of alternative means of egress may be used by jury in assessing the circumstances.); Ford v. Hotel Restaurant Employees BartendersUnion, 155 Conn. 24, 34, 229 A.2d 346 (1969) (Invitation includes part of premises held open as means of egress.).
Considering all the evidence in the light most favorable to sustaining the jury's verdict, the court concludes that the jury could have reasonably found that the icy sidewalk where Wilson fell had existed for a length of time and that if Kent Realty personnel had conducted a reasonable inspection before the employees began to arrive for work the defect would have been discovered. Thus, the evidence was sufficient to find that the storm had ended and that Kent Realty had constructive notice and was charged with the duty of remedying the defect or warning Wilson. CT Page 8203-as
The plaintiff further claimed that "unusual circumstances" existed so as to create a duty on the defendant to remedy the defect (the ice on the sidewalk). The court in Kraus, supra, 211 Conn. 191 stated the rule:
"We believe that in the absence of unusual circumstances, a property owner, in fulfilling the duty owed to invitees upon his property to exercise reasonable diligence in removing dangerous accumulations of snow and ice, may await the end of a storm and a reasonable time thereafter before removing ice and snow from outside walks and steps. To require a landlord or other inviter to keep walks and steps clear of dangerous accumulations of ice, sleet or snow or to spread sand or ashes while a storm continues is inexpedient and impractical. Our decision, however, does not foreclose submission to the jury, on a proper evidentiary foundation, of the factual determinations of whether a storm has ended or whether a plaintiffs injury has resulted from new ice or old ice when the effects of separate storms begin to converge." (Emphasis added.) Id., 197.
Among other evidence presented at trial the plaintiff presented evidence that; the defendant knew the time of the arrival and the method of ingress of the plaintiff and the other employees, the defendant knew the plaintiff suffered a disability, the defendant knew that the plaintiff used crutches to ambulate and that there was only one entrance that was handicapped accessible and usable by the plaintiff. It is reasonable that the jury may have considered some or all of this evidence to determine the issue of unusual circumstances.
"The sifting and weighing of evidence is peculiarly the function of the trier. [N]othing in our law is more elementary than that the trier is the final judge of the credibility of witnesses and of the weight to be accorded to their testimony. . . . The trier is free to accept or reject, in whole or in part, the testimony offered by either party." (Internal quotation marks omitted.) Smith Brook Farms, Inc. v. Wall,52 Conn. App. 34, 37, 725 A.2d 987 (1999). The jury had before it extensive evidence introduced by both the plaintiff and the defendant. It was the jury's function to consider the evidence and testimony, giving weight to that which it deemed credible and persuasive and discarding that which it deemed implausible and weak.
The court again notes that the verdict was a general verdict and the defendant did not request any interrogatories to address this issue of what, if any, unusual circumstances the jury considered.
In Cooks v. O'Brien Properties, Inc., supra, 48 Conn. 339, the Appellate Court stated that "the court properly allowed the jury toCT Page 8203-atconsider whether any unusual circumstances existed that would impose on the defendant the duty to remove the snow and ice from the steps on which the plaintiff fell prior to the cessation of the storm." (Emphasis added.) Id., 344-45.
This court adopted the approach set forth in Cooks and left it to the jury to consider whether any unusual circumstances existed in this case.
MOTION TO SET ASIDE THE VERDICT
The defendant has also moved, in the alternative, to set aside the verdict and order a new trial in that the jury's verdict is contrary to law, is against the evidence and is excessive.
A "verdict will be set aside and judgment directed only if [the court finds] that the jury could not reasonably and legally have reached their conclusion." (Internal quotation marks omitted.) Ham v. Greene,248 Conn. 508, 519, 729 A.2d 740 (1999). "The trial court should not set a verdict aside where there was some evidence upon which the jury could reasonably have based its verdict, but should not refuse to set it aside where the manifest injustice of the verdict is so plain and palpable as clearly to denote that some mistake was made by the jury in the application of legal principles. . . . Ultimately, [t]he decision to set aside a verdict entails the exercise of a broad legal discretion. . . . Limiting that discretion, however, is the litigants' constitutional right to have issues of fact determined by a jury where there is room for a reasonable difference of opinion among fair-minded jurors." (Internal quotation marks omitted.) Purzycki v. Fairfield, 244 Conn. 101, 106-07,708 A.2d 937 (1998). In making the determination as to whether to set aside a verdict, "[t]he evidence must be given the most favorable construction in support of the verdict of which it is reasonably capable.'" Gaudio v. Griffin Health Services Corp., 249 Conn. 523, 534,733 A.2d 197 (1999), quoting Fink v. Golenbock, 238 Conn. 183, 208,680 A.2d 1243 (1996).
The trial court has the power to set aside a jury verdict that is contrary to law. Practice Book §§ 16-35; 16-37. See Paige v. SaintAndrew's Roman Catholic Church Corp., 250 Conn. 14, 17 (1999). Practice Book § 16-37 provides that where the court reserves decision on a motion for directed verdict, the judicial authority "may set the verdict aside and either order a new trial or direct the entry of judgment as if the requested verdict had been directed."
"A trial court may set aside a verdict on a finding that . . . given the evidence presented, the jury mistakenly applied a legal principle or because there is no evidence to which the legal principles of the case CT Page 8203-au could be applied." Visoky v. Lavoie, 64 Conn. App. 501, 779 A.2d 1284
(2001).
Our Supreme Court has repeatedly stated that directed verdicts are not favored. Petyan v. Ellis, 200 Conn. 243, 244, 510 A.2d 1337 (1986). Nevertheless, the trial court has the power to set aside a jury verdict that, in its opinion, is contrary to either the law or the evidence. A-GFoods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 206, 579 A.2d 69
(1990). A verdict should not be set aside, however, where it is apparent that there was some evidence on which the jury might reasonably have reached its conclusion. Id.
A trial court's decision to set aside a jury verdict can implicate a party's constitutional right to a trial by jury. Young v. Data SwitchCorp., 231 Conn. 95, 101, 646 A.2d 852 (1994). We must be certain that such a decision did not infringe this right. Larsen Chelsey Realty Co.v. Larsen, 232 Conn. 480, 490, 656 A.2d 1009 (1995).
The defendant presents nine separate grounds in support of its motion to set aside verdict and for new trial. The first, second, third, sixth and seventh grounds of the motion to set aside and for new trial are based on the court's charge to the jury in that the charge was in error or improper.
The defendant claims that the court failed to charge the jury: "that the defendant had no duty to warn against open and obvious conditions," "that the defendant had no duty during an ongoing storm to use abrasive materials such as sand or salt," and that the court improperly failed to charge on other issues as requested by defendant. The defendant further claims that the jury was "improperly charged on unusual circumstances" and "was incorrectly charged on inconsequential negligence of the plaintiff'.
"The inherent power of a trial court to set aside a verdict because of palpable and harmful error in its charge to the jury is well settled."Trainor v. Frank Mercede Sons, Inc., 152 Conn. 364, 366-67, 207 A.2d 54
(1964). However, "this must be done with great caution, and only if [the judge] is entirely satisfied, upon an authoritative or statutory basis, that he has committed unmistakable error that has caused unquestionable harm." Sciola v. Shernow, 22 Conn. App. 351, 360, 577 A.2d 1081, cert. denied, 216 Conn. 815, 580 A.2d 60 (1990).
In reviewing the court's jury instructions, the Connecticut appellate courts "adhere to the well settled rule that a charge to the jury is to be considered in its entirety, read as a whole, and judged by its total effect rather than by its individual component parts. . . . [The courts] CT Page 8203-av do not critically dissect the charge in order to discover possible inaccurate statements. . . . Rather, [the courts] see if [the jury instructions] gave the jury a reasonably clear comprehension of the issues presented for their determination under the pleadings and upon the evidence and were suited to guide the jury in the determination of those issues. . . . [I]n [the] task of reviewing jury instructions, [the courts] view the instructions as part of the whole. . . . As long as [the instructions] are correct in law, adapted to the issues and sufficient for the guidance of the jury . . . [the courts] will not view the instructions as improper. Even if instructions are found to be improper, [the courts] must further determine whether they have been prejudicial to the claiming party by adversely affecting the trial's outcome." (Citations omitted; internal quotation marks omitted.)Blanchette v. Barrett, 229 Conn. 256, 280-81, 640 A.2d 74 (1994).
"`The court is under no duty at any time to charge in the exact language requested. . . . Failure to charge precisely as proposed by a [party] is not error where the point is fairly covered in the charge. . . . Instructions are adequate if they give the jury a clear understanding of the issues and proper guidance in determining those issues.'" Coble v.Maloney, 34 Conn. App. 655, 672, 643 A.2d 277 (1994), quoting Tomczuk v.Alvarez, 184 Conn. 182, 190, 439 A.2d 935 (1981).
"A charge . . . is to be read as a whole without the dissection of its parts. It will not be the source of reversible error absent a determination that the probable effect of the charge was to lead the jury to an incorrect verdict. . . . The charge must be examined to determine whether it fairly presents a case to a jury so that no injustice results and is not to be examined with a legal microscope, to search for technical flaws, inexact, inadvertent or contradictory statements." (Internal quotation marks omitted.) Glucksman v. Walters,38 Conn. App. 140, 153, 659 A.2d 1217 (1995). The question is whether the jury charge, "taken as a whole . . . fairly and adequately present[s] the case to a jury in such a way that injustice is not done to either party under the established rules of law." (Internal quotation marks omitted). Id., 157.
When read as a whole, the charge does not have the probable effect of leading the jury to an incorrect verdict. On the contrary, taken as a whole, the court finds that the charge fairly and adequately presented the case to the jury so that no injustice resulted.
While the court did not instruct the jury exactly in the words that the defendant sought, the court believes that it sufficiently charged the jury concerning the issues in the case. CT Page 8203-aw
The fourth basis of the motion to set aside and for new trial is that the verdict is against the evidence in that "the plaintiff offered no evidence to establish how long the alleged defect, an alleged icy condition, existed" and the fifth basis is that the verdict is against the evidence because "the undisputed evidence was that the fall occurred during an ongoing storm. Therefore, the defendant had no duty as a mailer of law." These are the same two bases that are reviewed above in the defendant's motion for judgment notwithstanding the verdict. The court will not repeat the discussion here.
The eight basis of the motion is that "the court erred in the admission and/or exclusion of [certain] evidence" The defendant claims that the trial court abused its discretion in several of its evidentiary rulings.
It is well settled that "the trial court's ruling on the admissibility of evidence is entitled to great deference. State v. Castonguay,218 Conn. 486, 497, 590 A.2d 901 (1991)." [T]he trial court has broad discretion in ruling on the admissibility . . . of evidence. . . . [ifs] ruling on evidentiary mailers will be overturned only upon a showing of a clear abuse of the court's discretion. . . . and only upset it for a manifest abuse of discretion." State v. Coleman, 241 Conn. 784, 789,699 A.2d 91 (1997).
 "One who . . . challenges a trial court's evidentiary rulings, whether they result the admission of evidence or its exclusion, must show a clear abuse of discretion by the trial court. The exercise of discretion to exclude proffered evidence is not to be viewed more critically than the exercise of discretion to include evidence".
Claveloux v. Downtown Racquet Club Associates, 246 Conn. 626, 626,717 A.2d 1205 (1998). Applying these principles to the facts of this case, the court's review of the record finds the defendant's claims regarding errors by the court in the admission and exclusion of evidence are infelicitous.
The ninth basis of the motion is that the "court denied the defendant's motion for mistrial after the plaintiff, in his direct testimony, stated that he had been referred for a second opinion by an insurance company.
"The general rule is that "the mere mention of insurance is not sufficient reason for setting aside a jury verdict." Meadows v.Vigneault, 152 Conn. 708, 710 206 A.2d 840 (1965). The defendant has presented no authority to contra the general rule.
MOTION FOR REMITTITUR CT Page 8203-ax
The defendant has moved for a remittitur on the grounds that the awards of damages are excessive and against the weight of the evidence, and further that the award of future damages is speculative.
As stated in Ham v. Greene, 248 Conn. 508, 535, 729 A.2d 740 (1999), the law regarding a claim for a remittitur is "well-settled." "Litigants have a constitutional right to have factual issues resolved by the jury. . . . This right embraces the determination of damages when there is room for a reasonable difference of opinion among fair-minded persons as to the amount that should be awarded. . . . This right is one obviously immovable limitation on the legal discretion of the court to set aside a verdict, since the constitutional right of trial by jury includes the right to have issues of fact as to which there is room for a reasonable difference of opinion among fair-minded men passed upon by the jury and not by the court. . . . The amount of a damage award is a mailer peculiarly within the province of the trier of fact, in this case, the jury. . . . The size of the verdict alone does not determine whether it is excessive. The only practical test to apply to [a] verdict is whether the award falls somewhere within the necessarily uncertain limits of just damages or whether the size of the verdict so shocks the sense of justice as to compel the conclusion that the jury was influenced by partiality, prejudice, mistake or corruption . . . (Internal quotation marks omitted). Id., 536.
The jury verdict was a general verdict. The jury had ample opportunity to assess the witnesses, their credibility, their demeanor, their testimony, their bias (if any), their motivations, their reliability, their accuracy in testifying, etc. The jury also had an ample opportunity to weigh all the evidence in this case. The court finds that the jury could have reasonably concluded as it did.
In this case, the jury rendered a general verdict. That fact, coupled with the absence of interrogatories, makes it impossible for this court to determine what factors the jury considered in making its award. The general verdict by its very nature is all encompassing and does not disclose what portion of the jury award represents economic damages for future medical expenses. This court has no reasonable basis on which to break down the verdict. Where there is a general verdict and no breakdown of the components of the verdict, it would be error to set it aside. SeeCreem v. Cicero, 12 Conn. App. 607, 612, 533 A.2d 234 (1987); Katsetosv. Nolan, 170 Conn. 637, 368 A.2d 172 (1976).
Without the submission of interrogatories to the jury, the trial court should not have assumed that the jury disregarded its instructions on the determination of damages. Harry A. Finman Son, Inc. v. ConnecticutCT Page 8203-ayTruck Trailer Service Co., 169 Conn. 407, 411, 363 A.2d 86 (1975).
INTEREST AND COSTS
General Statutes § 52-192a (b) states in pertinent part that "After trial the court shall examine the record to determine whether the plaintiff made an offer of judgment which the defendant failed to accept. If the court ascertains from the record that the plaintiff has recovered an amount equal to or greater than the sum certain stated in his offer of judgment, the court shall add to the amount so recovered twelve per cent annual interest on said amount . . . In those actions commenced on or after October 1, 1981, the interest shall be computed from the date the complaint in the civil action was filed with the court if the offer of judgment was filed not later than eighteen months from the filing of such complaint. If such offer was filed later than eighteen months from the date of filing of the complaint, the interest shall be computed from the date the offer of judgment was filed."
The court notes the following from the record:
— The action was filed with the court on November 17, 1999
— An offer of judgment was filed on May 18, 2001
 — The offer of judgment was filed eighteen months and one day after the filing of the action
 — The offer of judgment for $210,000 was less than the jury verdict of $457,367.80.
Because the offer of judgment was not filed within eighteen months, interest is computed from May 18, 2001, the date that the offer of judgement was filed to February 27, 2002. The amount of interest computed by the court is, therefore, $42,516.45.
Costs may enter according to the plaintiffs Bill of Costs dated March 12, 2002 in the amount of $6,050.93.
CONCLUSION
The Motion for Judgment Notwithstanding the Verdict is denied. The Motion to Set Aside the Verdict and for New Trial is denied. The Motion for Remittitur is denied. The Plaintiff having recovered a judgment, in the amount of $457,367.80, is entitled to interest on said judgment in the amount of $42,516.45 (Interest at statutory interest of 12% from May 18, 2001 to February 27, 2002) and costs of $6,050.93. CT Page 8203-az
 ___________________ Cremins, J.